UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                    21 cr. 729 (LAK)

   - against -

  HEAVEN WEST,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**SENTENCING MEMORANDUM**

KIRTON LAW FIRM
Attorney for Defendant
HEAVEN WEST
175 Fulton Avenue, Suite 305
Hempstead, New York 11550
(516) 833-5617 ph
(516) 833-5617 fax
kirtonlawfirm@gmail.com email
By: Marlon G. Kirton, Esq.

1

# KIRTON LAW FIRM

*Marlon G. Kirton, Esq.*

_____

*Nassau County:*
*175 Fulton Avenue, Suite 305*
*Hempstead, New York 11550*
*Tel. # (516) 833-5617*
*Fax # (516) 833-5620*

June 5, 2023

VIA ELECTRONIC FILING

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *United States v. Heaven West, 21 cr. 729 (LAK)*

Dear Judge Kaplan:

## HEAVEN WEST[1]

Heaven West (Heaven) is pretty easy to understand. She is a young woman forced to improvise her entire life. Born of a single mom, whatever stability Heaven had disappeared with the death of her paternal grandmother. Her grandmother was generous with her time, resources, and love. When she died, so did her stability. Heaven's dad was never able to support Heaven and her mom consistently. He has at least 20 children from several different women. He tried to raise her, but Heaven has no consistent history with her father. Heaven's mom had a difficult emotional journey. She struggled financially to raise Heaven alone. She and Heaven moved several times during her childhood. She lived in several apartments in New York City. She also

---

[1] This section was sourced from the indictment, Rule 16 discovery, the Probation Report, employment records, and Heaven West.

2

spent time in Georgia and South Carolina. Her mom may also have been frustrated that things didn't work out with Heaven's dad. They were like oil and water; the mouthy teenager and the troubled mom had more arguments than they could count. Heaven found a way out of her mom's house immediately.

Heaven is back in New York, and her maturity and her mom's career stability have changed the dynamics of their relationship. Heaven works, attends school, and lives with her mom in New York City.

Heaven regrets her association with the crimes in this case. She stands ready to pay restitution and wants to continue her redemption pathway. Her goal is to be a net benefit to society and give back to the community. Heaven works full-time as an onboarding specialist making $18.00 per hour at Total Transportation Corporation. She is also enrolled in an online bookkeeping program at Alliance Computing Systems. Heaven has had an extensive employment history and has continued to work after her arrest in this case.

## SENTENCING FACTORS

The United States Supreme Court, in *Apprendi v. New Jersey*, 530 US 466 (2000), focused on sentencing factors that impact the defendant. *Apprendi* requires that "any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 US at 490. The Supreme Court extended the logic of *Apprendi* in the landmark *Blakely* case. *Blakely v. Washington*, 124 S. Ct. 2531 (2004). The Court reviewed the constitutionality of a Washington State statute like the United States Sentencing Guidelines (USSG). In *Blakely*, the trial court sentenced the defendant to more than three (3) years above the 53-month statutory maximum for his offense. The basis of the enhanced

sentence was based on a finding made solely by a judge without the jury's input. *Blakely* held that the Washington State sentencing guidelines violated the defendant's Sixth Amendment right to a jury trial. The Court reasoned that the statutory maximum is any fact found by a jury or admitted by a defendant. However, *Blakely* did not expressly apply to the USSG *Blakely, supra* at footnote 9.

The Supreme Court then applied its Sixth Amendment analysis to the USSG. *United States v. Booker*, 125 S. Ct. 738 (2005). In *Booker* (also included in the companion case of *United States v. FanFan*), the Court applied the reasoning and holding of *Blakely* to the USSG. The Supreme Court held that a statutory maximum for purposes of the Sixth Amendment was any fact proved by a jury or admitted by a defendant. The Court reasoned that for the USSG to be constitutional, it had to be advisory rather than mandatory. 18 USC 3553(b) directs that the court "shall impose a sentence of the kind and in the range" established by the Guidelines. *Booker, supra.* To the extent that this section of the statute was mandatory, the Court severed section 3553(b) and made the USSG advisory rather than mandatory on federal judges. Furthermore, the Court also severed 18 USC 3742(e) as unconstitutional and held that the standard of review for appellate courts reviewing sentencing issues is "reasonableness." *Booker, supra*. Finally, Courts of Appeal were no longer entitled to review downward departures de novo; the standard for review is reasonableness. *Booker, supra*.

The Second Circuit's first attempt at applying *Booker* came in *Crosby*. *United States v. Crosby*, 397 F.3d 103 (2nd Cir. 2005). In that case, the defendant pleaded guilty and was sentenced to ten (10) years. He appealed, and the Court had to decide whether his sentence was unreasonable, considering the *Booker* decision. The Court remanded the case for the district court to apply the new standards in *Booker,* but it gave guidance to that Court and all district

courts. A district court must consider the USSG when rendering a judgment. While acknowledging that the USSG had become primarily advisory, the Court cautioned against returning to a pre-guidelines world of marked sentencing disparities. The Circuit gave a checklist for district courts to apply when implementing *Booker*, 1. The USSG is no longer mandatory, 2. The district court must consider the USSG and the other factors in section 3553(a), 3. The application of the USSG will usually require determining the applicable range for a particular case, 4. After considering the USSG and all of the relevant factors in section 3553(a), the district court must decide whether to impose a guidelines sentence or a non-guidelines sentence, and 5. The district court is entitled to find all the facts appropriate for rendering guidelines or non-guideline sentences.

## APPLICABLE GUIDELINES RANGE[2]

Given the guidance of *Crosby*, it is necessary to determine the appropriate guidelines range for Heaven. Heaven was convicted of one count of wire fraud in violation of 18 USC 3571. The Adjusted Base offense level is 13, and the Criminal History Category is I based on zero criminal history points. According to The Probation Department, the applicable guidelines range is 12-18 months. Probation recommended a sentence of time served.

## CLIENT'S ROLE IN THE OFFENSE[3]

Heaven pleaded guilty to one count of wire fraud in violation of 18 USC 3571. She had no leadership role, and her loss amount is between $40,000 and $95,000. Ms. Lewis pleaded guilty to two counts of conspiracy to commit wire fraud in violation of 371. Ms. Lewis was an organizer and leader of the scheme. Ms. Lewis directed subordinates, provided inside

---

[2] *Final PSR.*
[3] Based on the Rule 16 discovery, US PACER, the Government's sentencing memorandum, and the Final PSR.

5

information about a government program to co-conspirators, misappropriated the personal identifying information of healthcare workers, and submitted false documents. Her loss amount is between $250,000 and $550,000. Ms. Benjamin pleaded guilty to one count of conspiracy to commit wire fraud in violation of 371. Ms. Benjamin received an enhancement because she either possessed or used an authentication device. Her loss amount is between $250,000 and $550,000. Ms. Daniel pleaded guilty to one count of conspiracy to commit wire fraud in violation of 371. Ms. Daniel received an enhancement because she either possessed or used an authentication device. Her loss amount is between $250,000 and $550,000.

Heaven did not plead guilty to a conspiracy count and played no leadership role in the offense. Finally, her loss amount is substantially less than that of her co-defendants. A below the guidelines sentence of time served is appropriate.

## CONCLUSION

The Defense requests a below guidelines sentence of time served, three years supervised release, mandatory drug and alcohol testing, and drug and alcohol treatment as recommended by probation.

Sincerely,

*Marlon Kirton*
Marlon G. Kirton, Esq.


cc: Michael D. Neff, Assistant United States Attorney (via electronic mail)
    Emilee Sahli, Esq. (via electronic mail)

6